Stanley v. Drinkwater.

---

## REUEL STANLEY *versus* MARK L. DRINKWATER.

Where a vessel was attached upon a writ, and the officer did not take and retain the possession of it, but took a receipt therefor, the attachment was held to be dissolved thereby.

So, too, the purchase of the property by the attaching creditor taking a bill of sale of it from the debtor, operates as a dissolution of the attachment.

Where property is attached on execution, and the officer in his return states that the service, or further service of the execution, is suspended by reason of a former attachment, when no such attachment is in force; and afterwards takes a receipt for such property, to be re-delivered on demand, or within thirty days from the rendition of judgment in the first suit, no action can be maintained on such receipt.

If an attachment be dissolved by the acts of the parties, without the knowledge of the officer who made it, and he makes a subsequent attachment upon execution, subject to the first, and suspends further service of the execution for that cause, no rights will be secured to the creditor under the R. S. of 1841, chap. 117, secs. 33 and 34, beyond those which would have existed if the officer had known, when he made the second attachment, that the prior one had been dissolved.

---

Stanley *v.* Drinkwater.

This action comes before the full court upon REPORT by MAY, J., and the facts in the case are clearly stated in their opinion.

*A. P. Palmer,* counsel for the plaintiff.

*N. Abbott,* counsel for the defendant, argued as follows:

On February 2d, 1855, the plaintiff, then a deputy sheriff, attached one eighth of the schooner Flying Arrow, on a writ, Gilmore Sylvester v. Alvan Elwell, and took a *receipt,* and left the property in the hands of Elwell, the defendant.

On the 12th day of February, 1855, the plaintiff seized the same property on an execution in favor of H. M. Lancaster v. said Elwell.

On the 8th day of March, 1855, said Elwell sold by bill of sale the same property to Gilmore Sylvester.

On the 10th day of March, 1855, the receipt in suit was taken. On the 10th day of March, when the receipt in suit was taken, the property did not belong to Elwell, the debtor, but to Gilmore Sylvester, under his bill of sale of the 8th; hence, the action on the receipt must fail. 8 Maine, 122; 19 Maine, 49; 14 Maine, 414.

But the plaintiff claims to recover on the ground of his *seizure* of the property on Lancaster's execution, the 12th day of February. This he cannot do. That seizure was *void,* he not having *sold* the property within *four* days from the seizure, as the statute requires. But the plaintiff says he had a right, under the statute, to *suspend* and put off the *sale* beyond the four days, on the ground of a *prior* attachment, to wit, the attachment made February 2, in favor of Gilmore Sylvester. That attachment did not exist at the time of the *seizure* on the execution, the 12th. It had been *dissolved.* The plaintiff admits in his testimony that at the time he made said attachment he took a *receipt* for the property, and that he had no possession or control of the property after he took the receipt. The taking of that receipt *dissolved* the attachment. 37 Maine, 326. Hence there was no *attachment* on the property at the time of the *seizure* on Lancaster's exe-

cution; and hence there could be no *suspension* of the sale. All rights by virtue of the seizure were lost at the end of four days from the seizure. The attachment made on the 2d of February being *dissolved* by the officer's taking a *receipt*, all rights being *lost* by virtue of the seizure on the execution, on the 12th, by neglecting to sell within the four days, there was no claim on the property on the 8th of March, when Elwell sold it to Gilmore Sylvester; and hence on the 10th of March, when the receipt in suit was taken, Elwell had no property in the schooner; and if so, this action must fail. There are other grounds of defence, as the court will see by an examination of the case, but as I think the one named fatal to the action, I will omit the presentation of them.

MAY, J. This is an action upon a receipt, dated March 10th, 1855, given by the defendants to the plaintiff, as a deputy sheriff, wherein they promise and agree to re-deliver to the plaintiff one eighth part of the schooner called the Flying Arrow, with all her tackle and appurtenances, the same having been taken as the property of one Alvan Elwell, upon an execution against him in favor of one James Lancaster, subject, however, to a previous attachment upon a writ in favor of Gilmore Sylvester against said Elwell. By the terms of the receipt the property was to be re-delivered to the plaintiff, or his successor in office, on demand; and in case no demand should be made, then to be re-delivered within thirty days from the rendition of judgment in the action aforesaid.

The writ in said action was returnable to this court, at the May term, 1855, but was not entered; and the plaintiff thereupon, on the eighth day of said May, made a demand of said property upon his said receipt, and the defendant neglected to re-deliver the same. It further appears that the plaintiff in that suit, had on the eighth day of the preceding March, become the purchaser of said eighth part of said schooner, her tackle and appurtenaces, and that said Elwell on that day

had conveyed the same to him by a bill of sale in due form, and recorded at the custom-house in accordance with the statute requirements of the United States. This sale appears to have been made upon good consideration; and there is no testimony in the case tending to impeach it on the ground of fraud. By it the purchaser took all Elwell's interest in the schooner, subject only to such attachments as then existed upon it. Weston v. Dorr, 25 Maine, 176.

The attachment on Lancaster's execution appears to have been made on the twelfth of February preceding, and the officer's return thereon, states that "*said* attachment by reason of said prior attachment is suspended." The plaintiff testifies that subsequently he learned that the defendant, Drinkwater, had bought a part of the schooner, and was going to sea in her, and that he then took the receipt on which this action is founded. At this time he appears to have been ignorant of the sale from Elwell to Sylvester; and neither he or Lancaster had any knowledge of any settlement of Sylvester's suit, or of the dissolution of his attachment, if it had then been dissolved.

The plaintiff does not appear to have taken at the time of his attachment of the schooner upon Lancaster's execution, any steps to secure the benefit of such attachment, other than to notify the receiptor for the property upon Sylvester's writ of the fact of such subsequent attachment, and of the suspension of further service by reason of the prior one. He did not seize and retain possession of the schooner when the first attachment was made. He therefore must have relied upon his receipt, and not upon a continued attachment. Under such circumstances it was competent for Elwell to sell the schooner, and the purchaser would acquire a good title. Weston v. Dorr, 25 Maine R., 176, before cited. The taking of the first receipt operated as a dissolution of the first attachment, and subjected the property to a second attachment free from the first. Waterhouse v. Bird, 37 Maine R., 236.

At the time, therefore, when the attachment upon the exe-

cution was made, there was no such cause existing as to jus-
tify the suspension of further service, under the statute, as
is now contended for. The sale by the officer should have
been made in the same manner as if no prior attachment had
been made.

It follows also that when the plaintiff took the receipt in
suit, Elwell, the debtor in the execution, had no attachable
interest in the schooner. He had parted with all his interest
before. That such fact is a good defence to an action upon
the receipt, is too well settled to require the citation of au-
thorities to sustain it. If, however, we could regard the
first attachment as subsisting when the second was made,
and the suspension of further service as justified by the Re-
vised Statutes of 1841, chap. 117, secs. 33 and 34, still it is
difficult to perceive any ground upon which the plaintiff can
prevail. By the provisions of this statute the last attach-
ment upon the execution was continued only thirty days
after the first attachment should be dissolved. Assuming
that the officer's return shows *a suspension of the further
service of said execution* by reason of the prior attachment,
and *not an entire suspension of the attachment itself*, as the
language of the return seems to indicate, of which we give
no opinion, it then becomes necessary to determine when
the attachment upon Sylvester's writ was dissolved, so that
the plaintiff in this suit would no longer be responsible to
the creditor for the property returned upon that writ. Does
not the evidence in the case show such a dissolution more
than thirty days before the demand relied upon in this
suit? We think it does. We cannot doubt that Sylvester's
attachment was in fact dissolved on the eighth day of March,
1855, when he took his bill of sale. By that act the officer
would be relieved from all further obligation to detain the
property. The fact of the purchase, as well as the language
of the covenants contained in the bill of sale, which must
have been known to the creditor, is altogether inconsistent
with any other idea than that the parties to that bill of sale
must have intended that the attachment should then be dis--

solved. Such mutual intention then took effect. The fact that the action was not entered renders it probable that the bill of sale was made for the purpose of paying Sylvester his debt, then in suit. Such dissolution of his attachment, and the consequent discharge of the officer from all liability to keep and detain the property, deprived the officer of all right to reclaim the property from the debtor by virtue of that attachment, or upon his first receipt, and left the property open to a levy upon Lancaster's execution; but the property not having been seized or demanded within thirty days from such dissolution, all benefit of his attachment was thereby lost. Pearsons v. Tinker, 36 Maine, 384.

It is contended that the prior attachment ought not to be regarded as dissolved until the final adjournment of the court to which the writ was returnable. It is said that the action might by law be entered at any time during the term, and that until the term had expired neither the officer nor the execution creditor, could have had, and that they in fact did not have, any certain knowledge of the dissolution of the attachment. The statute clearly contains no such provision; and if such provision is desirable, it belongs to the legislature, and not to the court, to make it. By the statute as it now stands it is the fact of the dissolution of the attachment, and not the time when it becomes known by which we are to determine when the thirty days during which it continued, actually commenced. In view of all the facts, the attachment having been lost when the demand was made, the plaintiff must become nonsuit.

*Plaintiffs nonsuit.*

Tenney, C. J., Hathaway, Appleton, and Goodenow, J. J., concurred.